# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

THOMAS A. MOYER v. T. M. ELLIS.

November 12, 1936.

Present, All the Justices.

The opinion states the case.

*Charles Curry, K. C. Moore* and *Henry Strayer,* for the appellant.

*S. L. Walton,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

Thomas A. Moyer filed a bill in equity in the court below praying for specific performance of a contract whereby he claimed that Ellis had agreed to sell to him certain real estate. From a decree sustaining a demurrer to the bill and dismissing the cause this appeal has been allowed.

In substance the bill alleges these facts: On April 6, 1934, Ellis and Moyer entered into an oral contract whereby the former agreed to sell to the latter sixteen acres of land in Page county for the sum of $3,000. It was understood that Moyer would apply to the Home Owners' Loan Corporation, a federal agency, for a loan in the full amount of the purchase price. Ellis agreed that if the loan were made he would accept the bonds of the Home Owners' Loan Corporation at face value for the purchase price of the property.

Pursuant to this understanding Moyer applied for the loan, and on July 27, 1934, the district manager of the Home Owners' Loan Corporation wrote him that the corporation would lend the net sum of $2,337.70 on the property provided Ellis would accept the bonds of the corporation at their face value in part payment of the purchase price.

Under date of August 18, 1934, Ellis executed a "Mortgagee's Consent to Take Bonds" required by the corporation. This document referred to Moyer as the "owner" of the property and to Ellis as the "mortgagee" to the extent of $3,000. By its terms Ellis agreed that if the corporation would make a first mortgage loan to Moyer on the property, he, Ellis, would accept $2,400 of the bonds at their face value and "release" all of his claims on the land.

Attached to this form was the following letter dated August 20, 1934:

"Mr. Jack Kennan, District Manager,
"Home Owners' Loan Corporation,
"Harrisonburg, Va.
"Dear Sir:
"The attached consent, dated August 18, 1934, is signed by the undersigned agreeing to accept $2400.00 bonds of Home Owners' Loan Corporation, provided Thomas A. Moyer will pay in cash the *addition* amount to make the total of $3000.00, being the amount agreed upon as the purchase price for redeeming sixteen acres, more or less, including the buildings of the farm of Thomas A. Moyer which was purchased by T. M. Ellis after foreclosure sale.

"(Signed)    T. M. ELLIS.
"Accepted—
"By Jack Kennan, Dist. Mgr.
"Subject to approval of loan by H. O. L. C."

The complainant contends that these two documents signed by Ellis constitute a sufficient memorandum in writing to satisfy the statute of frauds.   (Code, section 5561.)

The bill further alleges that, "Complainant at the date of said letter was able to raise the $600.00 cash and told Ellis that he thought he would be able to raise the $3000.00 and take the property or else give him $2400.00 of the bonds and $600.00 cash, and Ellis said that would be all right if he could do it.   Complainant avers that he then made an effort to raise the $3000.00 for the said 16 acres and in December, 1934, notified Ellis that complainant was ready to pay $3000.00 in cash for the farm or to give him, according to his wish, $2400.00 of the Home Owners' Loan Corporation bonds and $600.00 cash.   Later Ellis refused to receive the $3000.00 for the said 16 acres of land and buildings and told complainant he could have it if he gave $500.00 more and complainant refused to do that. * * * * Complainant avers and charges that he has been ready and anxious to comply with the

terms of sale ever since December, 1934, and is now ready and willing to comply with the terms of sale, and now tenders to Ellis the purchase price agreed upon of $3000.00, * * * * ."

To the prayer for specific performance the defenses are: (1) The writings signed by Ellis lack the essentials of a contract to sell real estate—are indefinite as to terms and express no promise to convey. Cf. *Mann* v. *Mann*, 159 Va. 240, 244, 165 S. E. 522. (2) The documents show on their face that the agreement to sell was conditioned upon Moyer's being able to obtain a loan of $2,400 from the Home Owners' Loan Corporation, and his delivering to Ellis bonds of the corporation in that amount; that the bill fails to allege that these conditions were complied with.

Assuming, but not deciding, that the documents contain the requisites of a contract for the sale of real estate, we think the trial court was right in sustaining the demurrer.

It is perfectly plain that the writings relied upon by the complainant to constitute a written contract of sale are conditional. Ellis agreed to accept, in payment of the purchase price of the property, bonds of the Home Owners' Loan Corporation of the face value of $2,400 plus $600 in cash. He did not agree to accept $3,000 in cash.

It does not appear from the bill of complaint and supporting documents that the Home Owners' Loan Corporation ever definitely and finally agreed to make the loan of $2,400 to Moyer. While the bill refers to a letter from the district manager of the corporation to Moyer, dated July 27, 1934, as proof of the fact that it had agreed to lend $2,337.70 on the property, when Ellis subsequently wrote the district manager, on August 20, 1934, that he would take the $2,400 of bonds in part payment of the purchase price of the land, his proposition was accepted "Subject to approval of loan by H. O. L. C." This definitely shows that the loan had not been approved at that latter date.

It is alleged that in December, 1934, the complainant notified Ellis that he "was ready to pay $3000.00 in cash for the farm, or to give him, according to his wish, $2400.00 of the Home Owners' Loan Corporation bonds and $600 cash."

But how could Moyer deliver the bonds unless the loan had been made? If the corporation had agreed to make the loan, why was it not alleged in so many words?

But granting that the allegation that the complainant was ready to deliver the bonds is sufficient to warrant the inference that the corporation had agreed to make the loan, there is no allegation that the bonds were ever tendered to Ellis and refused by him. There is no claim that Ellis ever said that he would not take the bonds if the loan were made.

The allegation is that when the complainant told Ellis that he was ready to deliver the $2,400 of bonds and $600 in cash, or pay $3,000 in cash, Ellis refused to accept the $3,000 in cash. There is no allegation that he refused to accept the $2,400 in bonds and the $600 in cash.

The gist of the appellant's case is that he had the right to compel Ellis to accept the payment of the full purchase price in cash. But this is not correct. The tender of $3,000 in cash was not in accordance with the terms of the contract which provided for $2,400 in bonds of a certain character and $600 in cash. Ellis had the right to stand on the terms as written.

The principle is thus stated in 27 Ruling Case Law, page 535, section 268: "The express provisions of the contract control of course the duty of the purchaser as to the payment of the purchase money. If the contract calls for deferred interest bearing payments to be secured by a mortgage on the land or otherwise, the purchaser has no right to demand that the vendor receive full payment in cash, as this investment of a portion of the purchase money is a right on which the vendor may insist." See also, 58 Corpus Juris, page 1083, section 344; *Barbour* v. *Hickey*, 2 App. D. C. 207, 24 L. R. A. 763, 767; *Morgan* v. *East*, 126 Ind. 42, 25 N. E. 867, 868, 9 L. R. A. 558.

Nor is the complainant saved by his allegation that after Ellis had agreed in writing to accept bonds and cash for the purchase price of the property the parties verbally agreed that the whole purchase price might be paid in cash. It has long been settled in this State that a parol agreement

materially varying a prior written agreement for the sale of land is within the statute of frauds. To allow such substitution of the verbal for the written contract would defeat the very purpose of the statute. *Heth's Ex'r* v. *Wooldridge's Ex'r*, 6 Rand. (27 Va.) 605, 610, 18 Am. Dec. 751; *Pence v. Life*, 104 Va. 518, 520, 52 S. E. 257. See also, *Thompson* v. *Robinson*, 65 W. Va. 506, 508, 64 S. E. 718, 719, 17 Ann. Cas. 1109; Williston on Contracts (Revised Ed.), section 593.

It is not sufficient for the bill to assert that the complainant "is now ready and willing to comply with the terms of sale" when the further allegations show that such readiness consists in the ability to pay for the property in a manner other than that stipulated in the contract.

As we said in *Clinchfield Coal Co.* v. *Clintwood Coal & Timber Co.*, 108 Va. 433, 444, 62 S. E. 329, 333: "A mere assertion by a complainant in such a case, that he and those under whom he claims the right to have the contract specifically enforced were at all times ready, able and willing to carry out the contract on their part, will not suffice when the admitted facts on the face of the bill, as in this case, refute the assertion."

The decree sustaining the demurrer and dismissing the suit is plainly right and is affirmed.

*Affirmed.*