777 F.2d 942
 LANCE J. MARCHIAFAVA, INC., Appellee,
v.
Herbert H. HAFT; Gloria G. Haft; Robert M. Haft; Ronald
S. Haft; Linda Rappaport, Appellants.
LANCE J. MARCHIAFAVA, INC., Appellant,
v.
Herbert H. HAFT; Gloria G. Haft; Robert M. Haft; Ronald
S. Haft; Linda Rappaport, Appellees.
 Nos. 84-1978, 84-2051.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 9, 1985.
Decided Nov. 27, 1985.
 
 Joseph C. Wyderko (Rodney F. Page, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., on brief), for appellants/cross-appellees.
 John W. Thyden, Springfield, Va., for appellee/cross-appellant.
 Before WIDENER and CHAPMAN, Circuit Judges, and TURK, Chief United States District Judge for the Western District of Virginia, sitting by designation.
 WIDENER, Circuit Judge:
 
 
 1
 Lance J. Marchiafava, Inc. (Marchiafava, Inc.), a Virginia corporation solely owned and controlled by Lance J. Marchiafava, was a tenant operating a hair salon business in the Rolling Valley Shopping Mall in Fairfax, Virginia, under a lease dated August 1, 1980. It brought this diversity action against the five general partners of Combined Properties Limited Partnership (Combined Properties), the owners of the Rolling Valley Mall, seeking damages for breach of contract, and claiming that Combined Properties had breached an oral agreement not to lease space in the shopping mall to competing businesses. A jury awarded Marchiafava, Inc. $6,300 in damages, upon which verdict judgment was entered and from which this appeal is taken. Because we believe that the statute of frauds barred Marchiafava, Inc.'s claim on this oral agreement, we reverse the judgment of the district court.I
 
 
 2
 Lance J. Marchiafava was a professional hairdresser. In March 1980, Vincent Gesumaria, a local real estate developer, called Marchiafava about taking over certain rental space in the Rolling Valley Shopping Mall that was at that time occupied by another hair salon, Vincent et Vincent Hair Masters.[1] Marchiafava advised that he was interested in leasing the space but only if he was given a new lease that included the following terms: Marchiafava would only take one of the two store spaces formerly occupied by Vincent et Vincent; the lease would be for a term of ten years or for a combination of term and options adding up to ten years; the lease would not include a Consumer Price Index clause providing for adjustments of the rental payments, or that, if included, the amount of increase would have a maximum limit; Marchiafava would be allowed to enclose the front part of his store to avoid having to contribute to the mall's general utilities; and the shopping mall would not contain any competing hair salons. An appointment was then arranged for Marchiafava to discuss the lease with Combined Properties.
 
 
 3
 Marchiafava first discussed the lease with a representative of Combined Properties, Vana Martin, in June 1980. As a result of this meeting, Marchiafava testified that Martin acceded to each of Marchiafava's five demands in return for Marchiafava's payment of $5,000 toward the previous tenant's defaulted rent. In addition, Marchiafava was to receive title to the equipment that the previous tenants had left in the store.
 
 
 4
 On July 17, 1980, Marchiafava met with Gesumaria and Bernard Fagelson, counsel for Combined Properties and its representative during this meeting. During this meeting, Marchiafava initially refused to sign the proposed lease, which Combined Properties had drafted. Marchiafava based his refusal, in part, on the fact that he had visited the premises involved in the lease and had discovered that the equipment alluded to in his previous discussions with Vana Martin was not on the premises. Marchiafava also based his refusal to sign the lease on the fact that the proposed lease did not contain all the conditions that he had demanded and to which he insisted Martin had previously acceded.[2]
 
 
 5
 Marchiafava testified that Fagelson discussed the lease terms with Martin by telephone and then told Marchiafava that Combined Properties agreed to all of Marchiafava's conditions, including the condition that Combined Properties would not lease any space in the Rolling Valley Shopping Mall to competing hair salons. Fagelson does not deny that he discussed the lease conditions with Martin by telephone on July 17, 1980. He does deny, however, that he ever discussed the noncompetition provision with Martin.
 
 
 6
 Marchiafava signed the lease, which was dated August 1, 1980, at the conclusion of the July 17, 1980 meeting. Martin subsequently signed the lease on behalf of Combined Properties. The lease as signed did not contain any reference to the noncompetition provision. The lease also did not contain any direct reference to Marchiafava's request for permission to enclose the front wall of his store. Finally, the lease did not contain the cap on the extent of increase in rent based on the Consumer Price Index that Marchiafava had requested. The lease did contain provisions reflecting Marchiafava's demand for a combination of term and option provisions for a period of ten years, as well as Marchiafava's demand that the lease only cover one store instead of two.
 
 
 7
 On July 23, 1980, Marchiafava delivered his check for $5,000 to Combined Properties. Marchiafava testified that he delivered the check as his consideration for Combined Properties' accession to his five proposed lease terms and for the equipment in the store. After Combined Properties cashed the check and it was returned to him, Marchiafava made certain notations on it. On the front of the check, he wrote "leasehold improvements." On the back of the check, he wrote, "Donna, justify this payoff under leasehold im[provements] even tho' its for the wall & N.C." Marchiafava testified that the notations on the back of the check were instructions to his bookkeeper. Marchiafava also testified that the "N.C." in the notation on the back of the check referred to the noncompetition provision in his oral agreement with Combined Properties. Subsequently, Marchiafava enclosed the front of his store at Rolling Valley Shopping Mall. Combined Properties also signed over to him title to the equipment that Vincent et Vincent had left in the store, the precise value of which is not indicated in the record.
 
 
 8
 In March 1983, a competing hair salon began operating in the Rolling Valley Shopping Mall. In February 1984, Marchiafava, Inc. filed this case against Combined Properties. In its amended complaint, Marchiafava, Inc. sought only damages for the breach of the alleged oral agreement between itself and Combined Properties. Marchiafava, Inc. did not seek specific performance of the agreement or any other form of equitable relief. At both the close of the plaintiff's case and at the close of all the evidence, Combined Properties moved for a directed verdict on the grounds that the parol evidence rule and the statute of frauds precluded enforcement of the alleged oral agreement. The district court denied the motions to the extent that they were based on the statute of frauds, stating that the doctrine of part performance took the oral agreement out of the statute. The district court took under advisement the question concerning the applicability of the parol evidence rule to the oral agreement in question, and eventually denied Combined Properties' motions on this ground as well.
 
 
 9
 On appeal, Combined Properties raises two issues. First, it argues that the district court erred in not holding that the parol evidence rule barred as a matter of law Marchiafava, Inc.'s claim for breach of an oral agreement made prior to the execution of the written lease; and, second, that the district court erroneously applied the doctrine of part performance, ruling that the statute of frauds did not prohibit enforcement of the oral agreement.[3] Since we decide the case on the basis of the statute of frauds, we do not reach the appellants' contention regarding the applicability of the parol evidence rule.
 
 II
 
 10
 In this diversity case, we apply the substantive law of the forum, Virginia. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
 
 
 11
 Combined Properties has contended throughout that the statute of frauds barred the enforcement of Marchiafava, Inc.'s claim because the claim was predicated on an oral agreement. In the deliberations concerning Combined Properties' motions for a directed verdict, the district court assumed, and the parties did not contest, that the statute of frauds did apply to the oral agreement in question. On appeal, neither party contends that the statute does not apply to the oral agreement in question. Marchiafava, Inc., however, does and did contend that although the statute of frauds applies to the agreement in question, either the doctrine of part performance took the agreement out of the statute, or Combined Properties was estopped from asserting the statute as a defense.[4] Because the parties are in agreement on this point, we assume, without deciding, that the statute of frauds does, in fact, apply to the oral agreement in question. Consequently, in resolving this appeal, the sole issues that we address are whether the doctrine of equitable estoppel prevents Combined Properties from asserting the statute of frauds as a defense and whether the doctrine of part performance removed the agreement in question from the statute's protection.
 
 
 12
 A. Equitable Estoppel as a Bar to Statute of Frauds Defense
 
 
 13
 Marchiafava, Inc. contends, in part, that Combined Properties' failure to perform its obligations under the oral agreement in question resulted in substantial detriment to Marchiafava, Inc., including causing it to sign a lease that it would never have otherwise signed, as well as undertaking leasehold improvements on the store property leased. The argument goes that Combined Properties' actions in negotiating the lease and its subsequent failure to perform on the obligations in its oral agreement estop it from asserting a statute of frauds defense to Marchiafava, Inc.'s claim.
 
 
 14
 Virginia recognizes the doctrine of equitable estoppel as a bar to the assertion of a statute of frauds defense. See T ... v. T ..., 216 Va. 867, 872-73, 224 S.E.2d 148, 151-52 (1976). It is well established, however, that the doctrine of equitable estoppel does not apply to situations in which the party asserting the estoppel has suffered detriment resulting solely from another party's failure to perform an obligation under the oral agreement. Cottrell v. Nurnberger, 131 W.Va. 391, 47 S.E.2d 454, 461-62 (1948) (plurality opinion), followed by the court in Bennett v. The Charles Corp., 159 W.Va. 705, 226 S.E.2d 559 (1976); see also WILLISTON ON CONTRACTS Sec. 533A, at 806 (3d ed. 1960) (use of doctrine of equitable estoppel as bar to assertion of statute of frauds defense requires more than one party's mere refusal to perform his agreement because either party has right to refuse to execute parol contract within statute).
 
 
 15
 Marchiafava, Inc. attempts to circumvent this well established principle in its argument on appeal by invoking a case in which the Virginia Court estopped the vendor of a parcel of land from asserting a statute of frauds defense to a claim incidental to a sale of land due to certain oral representations that the vendor had made to the vendee concerning the establishment and use of an adjoining alley. See Trueheart v. Price, 16 Va. (2 Munf.) 468 (1811) (upholding injunction against vendor of real property from closing alley that vendor had represented as having been "established, and always to be kept open," despite assertion of statute of frauds defense). The holding in Trueheart, however, does not control the present case because in that case there was a misrepresentation that the alley had been established, a past as well as an existing fact, not merely the giving of an oral promise that it would be kept open in the future. See Cottrell v. Nurnberger, 131 W.Va. 391, 47 S.E.2d 454, 458-59 (1948). MINOR ON REAL PROPERTY Sec. 105, at 145 (2d ed. 1928) states the accepted rule in cases respecting claimed oral restrictions on land use: "Estoppel, however, is not strictly applicable where the restriction involves a promise for the future rather than a representation of past or existing fact." In this case, Marchiafava's testimony at trial clearly indicates that he considered the noncompetition provision in the oral agreement in question to be one of the promises that he obtained from Combined Properties in exchange for his $5,000. Misrepresentations of past or existing facts were neither claimed nor proven. Neither was there any claim that Combined Properties did not intend to carry out the promise when made, sometimes considered a species of fraud. Because the detriment to Marchiafava resulted solely from Combined Properties' failure to perform on an oral promise, we conclude that this case falls within the rule stated in Minor and that Combined Properties has not done other than exercise its statutory right to refuse to execute a parol contract that falls within the statute of frauds. Consequently, we hold that Combined Properties was not estopped from asserting the statute of frauds as a defense to Marchiafava, Inc.'s claim.
 
 
 16
 B. Part Performance as Bar to Statute of Frauds Defense
 
 
 17
 In denying Combined Properties' motions for directed verdict on the statute of frauds ground, the district court held that although the statute applied to the agreement in question, the doctrine of part performance took the agreement out of the statute. Marchiafava, Inc. brought this action seeking only damages for Combined Properties' alleged breach of the oral agreement in question. It did not seek specific performance of the alleged oral agreement, nor did it seek any other form of equitable or legal relief. The doctrine of part performance is not available in Virginia in such actions at law for damages for breach of contract to take an oral agreement out of the statute of frauds. See Porter v. Shaffer, 147 Va. 921, 933, 133 S.E. 614 (1926) (part performance by one party to contract within statute of frauds will not, at law, entitle that party to recover upon contract itself); Ricks v. Sumler, 179 Va. 571, 576, 19 S.E.2d 889 (1942) (statute of frauds prohibits action at law for damages for breach of parol agreement); CORBIN ON CONTRACTS Sec. 422 (1952) (part performance doctrine not applicable to take a contract out of the statute of frauds in actions at common law for damages for breach of the contract). Because the doctrine of part performance does not operate in actions at law for damages for breach of an oral contract to take the contract out of the statute of frauds, the district court committed error in ruling that the doctrine took the oral agreement in question out of the statute of frauds.[5]
 
 The judgment of the district court is
 
 18
 REVERSED.
 
 
 
 [1]
 Gesumaria was a guarantor on the Vincent et Vincent lease. In early 1980, Vincent et Vincent had defaulted on their lease and were in arrears on their rental payments for between $20,000 and $30,000. An arrangement to Combined Properties was proposed under which Combined Properties would excuse Gesumaria on his guarantee if a new tenant could be found. Combined Properties agreed to the proposal, whereupon Gesumaria called Marchiafava in March 1980
 
 
 [2]
 Marchiafava later admitted, however, that the lease did contain two of his conditions: that Marchiafava would only lease one of the two stores previously occupied by Vincent et Vincent; and that the term of the lease with an option cover a period of ten years
 
 
 [3]
 Marchiafava, Inc. cross-appeals on the ground that the jury verdict of $6,300 was so clearly inadequate that this court should set it aside. Because we vacate the district court's judgment on the issue of liability, we do not consider Marchiafava's contention concerning the adequacy of the jury's damage verdict
 
 
 [4]
 In its brief, Marchiafava, Inc. combined two separate arguments concerning the viability of Combined Properties' statute of frauds defense, contending that the district court properly estopped Combined Properties from asserting a statute of frauds defense in the face of Marchiafava's part performance. Under Virginia law, as in most other States, the doctrine of estoppel and the doctrine of part performance constitute two separate, albeit related, bars to the assertion of a statute of frauds defense. See T ... v. T ..., 216 Va. 867, 872, 224 S.E.2d 148 (1976); WILLISTON ON CONTRACTS Sec. 533A, at 791-92 (3d ed. 1960). Although the district court apparently rested its decision concerning the applicability of the statute of frauds defense solely on the doctrine of part performance, because each doctrine can separately constitute a bar to a statute of frauds defense in Virginia, this opinion will discuss the applicability of both doctrines to the agreement in question
 
 
 [5]
 We caution that our discussion with reference to the application or non-application of the statute of frauds in breach of contract actions, because of part performance or estoppel, should not be read as necessarily applying where a plaintiff proceeds on other theories for relief such as specific performance, unjust enrichment, money had and received, quantum meruit, etc. In many of such cases, different rules apply